# Building Service Employees International Union, Local 252, *v.* Schlesinger et al., Appellants.

Argued November 13, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Geoffrey J. Cunniff*, with him *James J. Binns*, for appellants.

*Richard H. Markowitz*, with him *Richard Kirschner*, and *Wilderman, Markowitz & Kirschner*, for appellee.

OPINION BY MR. JUSTICE POMEROY, October 9, 1970:

This equity action was brought by Local 252 of the Building Service Employees International Union (Union) against the operators of 19 private nursing and convalescent homes in the Philadelphia area (the Employers)[1] to compel them to comply with certain provisions of a collective bargaining agreement in effect between the parties. While admitting that they had not complied with the relevant provisions of the agree-

---

[1] All of the 19 Employers were members of the Philadelphia Nursing Association, which negotiated the agreement on their behalf as a multi-employer bargaining unit.

ment, the Employers in their answer alleged that the agreement was invalid and hence gave rise to no obligations on their part. The Chancellor found the agreement to be valid and entered a decree nisi in favor of the Union, ordering the Employers to comply with the terms of the contract. After their exceptions were overruled by the court *en banc* and the decree was made final, the Employers brought this appeal.

The agreement which the Union sought to enforce was executed January 23, 1962 and was, in effect, an extension of a prior collective bargaining agreement entered into in 1959. The Employers contend that at the time this original agreement was executed by them, the Union did not represent a majority of the employees of each nursing home. From this they conclude that the execution of the 1959 agreement, which recognized the Union as exclusive bargaining agent for the employees of all the nursing homes, constituted an unfair labor practice under Section 6 of the Pennsylvania Labor Relations Act, Act of June 1, 1937, P. L. 1168, §6, as amended, 43 P.S. §211.6, and that the 1962 agreement, as an extension of the earlier one, is invalid and unenforceable because it violates the public policy of the Commonwealth as expressed in the Pennsylvania Labor Relations Act.[2]

--------

[2] The court below made no finding of fact as to whether the Union did have majority status at the time of the execution of the initial agreement; nor did it make any conclusion of law as to whether the execution of the agreement constituted an unfair labor practice. The court found only that at the time of entering into the agreement the Union claimed to represent a majority of the employees of all the nursing homes and that the Employers, by entering into the agreement, acknowledged such representation. While resolution of this factual question is not essential to our decision, we note that the record would have supported a finding by the lower court that while the Union may not have represented a majority of the employees in each of the 19 nursing homes in 1959, it did represent a majority of the total number of employees em-

The Employers' defense is principally grounded upon the holding of the Supreme Court of the United States in *International Ladies' Garment Workers' Union, AFL-CIO v. National Labor Relations Board,* 366 U.S. 731 (1961), affirming 280 F. 2d 616 (D.C. Cir. 1960) (popularly known as the *Bernhard-Altmann* case). The Supreme Court there found, as had the National Labor Relations Board, that recognition by an employer of a union as an exclusive bargaining agent of certain of its employees, although in fact the union represented only a minority of those employees, was an unfair labor practice, and that this was so even though the recognition was extended in the good faith belief that the union had the consent of a majority of the employees in the appropriate bargaining unit. In addition, the Court approved the Board's order that the employer withhold recognition from the union and cease giving effect to agreements entered into with it, and that the union cease acting as bargaining representative until its majority status was established by a Board-conducted election, and refrain from seeking to enforce agreements previously entered into. It is apparent that the posture of the *Bernhard-Altmann* case was quite different from that of the case at bar. The former was a proceeding brought before the NLRB to rectify an alleged unfair labor practice; the Board

---

ployed by all of the nursing homes comprising the Philadelphia Nursing Association. We note further that there is here no problem of preemption by the federal government, notwithstanding its extensive regulation of labor relations. This being an action to enforce a collective bargaining agreement, the lower court correctly held that it had jurisdiction. *Shaw Electric Co., Inc. v. I.B.E.W.L.U. No. 98,* 418 Pa. 1, 208 A. 2d 769 (1965) ; *Teamsters Union v. Lucas Flour Co.,* 369 U.S. 95, 102 (1962). If, however, local law and the principles of federal labor law should be in conflict in determining enforceability, local law must give way. *Teamsters Union v. Lucas Flour Co., supra,* at 102, 103.

found that an unfair practice existed, and entered a remedial order. In the case before us there has been no such determination by either the NLRB or the Pennsylvania Labor Relations Board.

The Employers emphasize that they are not seeking redress of an unfair labor practice, but only judicial cognizance that the execution of the 1959 agreements, and, by the same token, the execution of the 1962 agreement, were unfair practices and that such unfair practices constitute a complete defense to enforcement of the agreement. We hold that this defense is not available, because exclusive jurisdiction to find and prevent unfair labor practices rests with the federal or state labor relations board, as the case may be. See the Pennsylvania Labor Relations Act, *supra*, 43 P.S. 211.8, and the National Labor Relations Act, §10(a), 48 Stat. 926, as amended, 29 U.S.C. §160(a). The Pennsylvania act expressly provides that the power of the Board to prevent any person from engaging in any unfair labor practice "shall be exclusive and shall not be affected by any other means of adjustment or prevention that have been or may be established by agreement, law, or otherwise." While this provision speaks directly to preventing, as distinguished from determining the occurrence of, an unfair labor practice, we think the latter function is implicitly embraced in the former. While the federal statute is not so explicit as to exclusivity, the United States Supreme Court has construed it to mean that the NLRB has ". . . exclusive power to decide whether unfair labor practices have been committed and to determine the action the employer must take to remove or avoid the consequences of his unfair labor practice." *National Licorice Co. v. NLRB*, 309 U.S. 350, 365 (1940).[3] Subsequent modifica-

_____
[3] This rule is subject to an exception not here material, viz., a suit for breach of contract in which the breach is also an unfair

tions of the federal act have not altered this interpretation. It still is true that "[n]ormally the question of whether a party committed an unfair labor practice is to be determined initially and solely by the Board, subject to review." *Surprenant Mfg. Co. v. Alpert*, 318 F. 2d 396, 399 (1st Cir. 1963).[4] The question raised in defense is thus outside the jurisdiction of the courts in the first instance. We need not seek to justify this constraint upon the courts, but in light of the expertise possessed by both the national board and our state board in dealing with the basic but sometimes technical concepts of unfair labor practice, the rule appears to us to be a salutary one.

Similar reasoning no doubt led the Sixth Circuit Court of Appeals to reject the identical contention raised by the Employers here. *Pennington v. United Mine Workers of America*, 325 F. 2d 804, 819 (6th Cir. 1963), reversed on other grounds, 381 U.S. 657 (1965). After stating the holding in the *Bernhard-Altmann* case, *supra*, that court reasoned: "The Court [in *Bernhard-Altmann*] did not have before it the question of the validity of the contract in a common law action to enforce it. The issue which it was passing upon was whether the execution of the contract constituted an unfair labor practice, and, if so, what was the proper remedy. The remedy was to direct the parties to cease and desist from operating under it. Because of the unfair labor practices the agreement *failed* to be bind-

---

labor practice. See *Vaca v. Sipes*, 386 U.S. 171, 179-80 (1967); *Hill v. Aro Corporation*, 275 F. Supp. 482, 488 (N.D. Ohio, 1967). Here the suit is for breach of contract, but the Employers contend that entering into the contract, not their breach thereof, constituted the unfair labor practice.

4 It is irrelevant to the determination of this case, and we do not decide, which board would have had jurisdiction to determine in the first instance whether an unfair labor practice was committed in this case.

ing on the parties. The same might be true of the bargaining agreement in this case if this was a proceeding before the Labor Board involving an unfair labor practice. But it is not that kind of proceeding over which the Labor Board has exclusive jurisdiction. Portland Web Pressmen's Union v. Oregonian Publishing Co., 286 F. 2d 4, C.A. 9th, cert. denied, 366 U.S. 912, 81 S. Ct. 1086, 6 L. Ed. 2d 237. Neither the District Court nor this Court has jurisdiction to find either of the parties to the bargaining agreement guilty of an unfair labor practice, and no such finding has been made. In the absence of such a proceeding and finding, we are of the opinion that the ruling in [*Bernhard-Altmann*] is not applicable." Other than the *Pennington* case, counsel has not cited, nor have we found, any federal decision considering the specific issue here presented.

Since the determination of the occurrence of an unfair labor practice does not lie within the jurisdiction of the courts, no grounds have been presented in this case upon which the collective bargaining agreement could be held invalid. The learned Chancellor was therefore correct in finding it valid and ordering compliance therewith.[5]

In his decree the Chancellor retained jurisdiction over the matter so that the damages suffered by the Union might be ascertained and awarded. This part of the decree was in error. Once the validity of the agreement had been established, the correct disposition

---

[5] In light of this disposition, we need not discuss the other ground upon which the court below based its decision, viz., that the Employers, having accepted and complied with the labor agreements in question from 1959 to 1962, and having been privy to the alleged unfair labor practice, are now estopped to assert the invalidity of the agreement which they entered into with advice of counsel.

of the matter was to order compliance with all its terms, including the arbitration of disputes clause contained in paragraph 10. Since the extent of the damages suffered by the Union as a result of the Employers' failure to perform in accordance with the terms of the agreement is a dispute under the agreement, it comes within the scope of the arbitration clause. We hereby modify the Chancellor's decree by striking the portion thereof which follows paragraphs (a) and (b) and ordering that the parties submit to arbitration, in accordance with the agreement, the question of the extent of past damages suffered by the Union as a result of the Employers' failure to fulfill their obligations under the agreement.

Decree affirmed as modified. Each side to bear its own costs.