EMPIRE STEEL CASTINGS, INC.

v.

UNITED STEELWORKERS OF AMERICA, AFL–CIO.

Civ. A. No. 77–2608.

United States District Court, E. D. Pennsylvania.

July 17, 1978.

Thomas M. Golden, Stevens & Lee, Reading, Pa., Carrol Hament, Baltimore, Md., for plaintiff.

Daniel P. McIntyre, Pittsburgh, Pa., Norman M. Berger, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

This case, involving a review of the decision of a labor arbitrator, is before us on cross-motions for summary judgment. The

employer plaintiff is seeking vacation of an arbitrator's award in which a discharged employee was reinstated and given full backpay.

The material facts are not contested. On Friday, June 18, 1976, an employee of plaintiff was arrested for possession and sale of marijuana on the plaintiff's premises during the employee's work shift. As a result, on June 21, 1976, the plaintiff informed the employee that he had been discharged effective June 18. A discharge notice was issued on June 22, stating that the employee was discharged for "violation ^f Rule # 35: (Possession and selling a controlled substances (sic) to a narcotic agent during working hours and on Company property. Arrested 6/18/78.)" (Plaintiff's Exhibit 3.) Rule 35 provides for the discharge of an employee who has been convicted of a felony or crime of moral turpitude. The Rules and Regulations of plaintiff expressly provide that "rules and regulations cannot be provided for every possible situation, but those listed in this pamphlet will serve as a guide to the conduct expected from other employees."

On July 19, 1976, almost a month after receipt of the written notice of discharge, the defendant union filed a grievance protesting the employee's discharge.[1] After the normal grievance procedures required by contract had been exhausted, the matter was submitted to arbitration. On May 3, 1977, the arbitrator ordered the Company to reinstate the employee with full backpay.

The decision of the arbitrator was based upon procedural irregularities in the employer's actions. First, the arbitrator cited the employer's failure to follow certain discharge procedures contained in a letter agreement dated July 11, 1975.[2] Those pro-

---

1. The union's initial grievance alleges that the company failed to follow two procedural steps required by Article XV of the collective bargaining agreement: 1. failure to take up the discharge within five days of its occurrence and 2. failure to have a Grievance Committeeman accompany the employee at the time the discharge was considered. Article XV sets forth the procedures to be followed in discharge cases. *But see* note 2, *infra.* The union

did not press these grounds in arbitration, *see* Plaintiff's Exhibit 7, and these grounds were not discussed in the arbitrator's opinion.

2. The letter from the union staff representative states:

I am writing regarding our discussion concerning discharges and the possibility of speeding up the process.

cedures, according to the arbitrator's opinion, required that the employer in all cases suspend an employee prior to discharge and hold a hearing within five days of the notification of suspension with intent to discharge. Second, the arbitrator concluded that it was error to invoke Rule 35, which governs dismissal upon conviction of a crime, in this case involving an employee arrested but not yet convicted.[3]

The employer contends that the arbitrator's award should be overturned as lacking fundamental rationality. First, the employer argues that the notice of termination clearly provided that the reason for dismissal was possession and sale of controlled substances during working hours. Since the Rules and Regulations expressly state that they are not exclusive grounds for discipline, the employer may discharge employees for reasons not listed in the manual if they constitute "proper cause" as required in Article XII of the collective bargaining agreement. The fact that Rule 35 was mistakenly cited in the discharge notice did not prejudice or mislead the employee since the reasons for his dismissal were clearly set out as well. Second, the employer contends that the letter agreement imposes no absolute requirement on the company to suspend an employee prior to discharge. Rather, the procedures described in the letter are required only when there is a suspension preceding discharge. Furthermore, the employer argues that if it is held to a strict compliance with the letter agreement, the union should be also. The union, however, failed to file for arbitration within five days of the company's written notice of discharge, as required by the letter agreement, and instead proceeded with the normal grievance procedures set forth in Article X of the collective bargaining agreement. For these reasons, the employer argues that the labor award be vacated.

■ The scope of review of a labor arbitration award is limited. The only issue to be decided is whether the labor arbitrator's award "draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). This standard has been interpreted by the Court of Appeals for the Third Circuit as requiring affirmance of an award if "the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award." *Ludwig Honold Manufacturing*

As I stated on the telephone, we have been taking too long in the procedure on getting them resolved. I am suggesting the following procedure for resolving the question quickly and cutting down the liability period for the Company.

Upon notification of suspension with intent to discharge a hearing would be held within five (5) working days with the Representative and Grievance Committee.

At this time, or within five (5) working days, the Company would confirm its discharge or propose such settlement as it deemed appropriate in writing to Grievant, the Committee and the Representative.

The Union Representative, upon receipt, would have five (5) working days to affirm the Company's action or move the case to the American Arbitration Association for selection of the third party.

This procedure would cut out lengthy unnecessary delays and eliminate friction and hardship with the grievant.

If this procedure is acceptable or if a modified form is possible, I would be happy to hear from you on this matter.

Plaintiff's Exhibit 5a. The Company accepted this proposal by letter dated July 15, 1975. This letter agreement apparently modifies Article XV of the collective bargaining agreement, which governs discharges. Under Article XV, the normal grievance procedures contained in Article X are incorporated by reference. The arbitrator never discussed how the modification contained in the letter agreement interrelates with the procedures under Article X and Article XV.

3. On September 3, 1976, the employee pleaded guilty to charges of illegal possession and sale of marijuana in the Court of Common Pleas of Berks County, Criminal Division, Commonwealth of Pennsylvania.

*Company v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969). Stated another way, an arbitrator's award may be overturned only if it does not meet the test of "fundamental rationality." *Swift Industries, Inc. v. Botany Industries*, 466 F.2d 1125, 1131 (3d Cir. 1972). Accord, *Schlesinger v. Building Services Employees International Union*, 367 F.Supp. 760, 767 (E.D.Pa.1973). Although the standard of review is stringent, it is clear that the powers of an arbitrator are not unlimited. "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel & Car Corp., supra* 363 U.S. at 597, 80 S.Ct. at 1361.

■ In the case before us, we believe that the decision of the arbitrator exceeded the bounds of the collective bargaining agreement and lacked fundamental rationality. The arbitrator did not consider the merits of the discharge, but instead based his decision solely upon alleged procedural irregularities. In so doing, we believe that the arbitrator so misconstrued the procedural requirements as to constitute a "manifest disregard" for the collective bargaining agreement.

■ First we address the arbitrator's determination that it was a procedural error for the company to invoke Rule 35 as a reason for plaintiff's discharge. The arbitrator failed to note that the precise reason for the discharge was stated clearly in parentheses following the citation to Rule 35. Therefore, no prejudice due to lack of notice to the employee could have resulted. Thus, assuming that the stated reason constituted "proper cause" as required by Article X of the collective bargaining agreement, the discharge notice was proper in form.

We are frankly confused by the arbitrator's reasoning on this issue. He did not say that the stated reason for the dismissal, possession and selling of a controlled substance on company premises, is not "proper cause" for dismissal. Indeed, he never considered the issue of "proper cause." Furthermore, he did not find that the reasons for discharge stated in the company's "Rules and Regulations" are exclusive; such a reading would be unreasonable in view of the clear statement by the employer that they are not exclusive.

■ The arbitrator appeared to be saying that merely by mislabelling the stated reason for discharge by citing to Rule 35, the discharge is thereby invalidated. If this is so, then we believe that the arbitrator strayed beyond the essence of the contract he was charged with interpreting. A district court is not empowered to reject an arbitrator's award merely because the court disagrees with the reasoning employed by the arbitrator. *Ludwig Honold Manufacturing Co. v. Fletcher, supra* at 1128. Nevertheless, there is simply no provision in the collective bargaining agreement which provides that the notice of discharge must cite the correct rule in order for the discharge to be valid. Fairness dictates that an employee be told of the reason for his discharge, as was done in this case. However, a notice containing only a statement of the reason for discharge, without giving a rule number, would certainly not be objectionable. We find nothing in the collective bargaining agreement which would cause us to reach a different result here.

■ The second reason for the arbitrator's award related to the letter agreement and the failure of the employer to suspend the employee prior to dismissal. We disagree completely with the interpretation given to the letter agreement by the arbitrator. The letter agreement was designed to accelerate the process of settling disputes concerning discharges by eliminating many of the grievance steps provided by Article X of the collective bargaining agreement. To read this letter agreement as requiring suspension prior to discharge is, we believe, unreasonable. However, mere disagreement with an arbitrator's construction of a contract is not grounds for overturning an award, since "it is the arbitrator's construction which was bargained for." *United Steelworkers of America v. Enterprise*

837

*Wheel & Car Corp., supra* 363 U.S. at 599, 80 S.Ct. at 1362.

█ In this case, there are other reasons for concluding that the arbitrator's award exceeded his power to act and violated the standard of "fundamental rationality." Here, the union clearly did not follow the procedures outlined in the letter agreement, but rather engaged in the normal grievance machinery outlined in Article X. The record reveals that throughout the entire grievance procedure until the time the case was referred to arbitration, the union did not raise the issue of the company's failure to suspend the employee prior to discharge or otherwise to follow the letter agreement. Thus, the union in fact acceded to the Article X procedures. We believe this excuses the employer's failure to adhere to the procedures in the letter agreement as interpreted by the arbitrator.

█ Since the arbitrator construed the letter agreement as providing mandatory discharge procedures, he concluded that the actual noncompliance with the procedures should not relieve the employer from being bound by them. While this may be true, if the procedures are mandatory as applied to the employer, then they are also mandatory as applied to the union.[4] We conclude, therefore, that it was unreasonable for the arbitrator to bind the employer to strict compliance with the terms of the letter agreement while not similarly binding the union. If the agreement is applied here as a limit on the actions of both parties, the arbitrator is without jurisdiction to decide this case because of the failure of the union to resort to arbitration within five days of receipt of the notice of discharge. The union cannot have it both ways. In view of the parties' conduct, however, we believe that the letter agreement cannot and should not have been applied to bar the plaintiff's dismissal of the employee.

In conclusion, we hold that the arbitrator's award is unreasonable, exceeds the bounds set by the contract itself, and should be vacated.

4. The arbitrator implied that the employer did not raise the issue of the union's noncompliance with the letter agreement. This is simply

not true. *See* Plaintiff's Exhibit No. 6. (Letter brief of plaintiff).