**INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 450, Plaintiff,**

v.

**MID–VALLEY, INC., Defendant.**

**Civ. A. No. 72–H–316.**

United States District Court,
S. D. Texas,
Houston Division.

Sept. 13, 1972.

W. Arthur Combs, William D. Yale, Jr., Combs & Archer, Houston, Tex., for plaintiff.

William A. Brown, Powell, Brown & Maverick, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

NOEL, District Judge.

The International Union of Operating Engineers (Union), victorious in arbitration, seeks enforcement of an arbitrator's decision against Mid-Valley, Inc. (Company).

### I. *Factual Background*

The arbitrated dispute concerns the application of a general collective bargaining contract to a particular project which began August 23, 1971, and ended March 23, 1972. Union complains that the contract obligated Company to hire operating engineers to operate its dewatering devices (pumps) on the project. Company responds that the pumps on that project were not the same device contemplated by the agreement and did not need supervision.

A meeting of a Grievance Committee held on August 30, 1971, failed to resolve the issue. The Committee selected an arbitrator, Professor Raymond Britton, and submitted the following question to him:

Is the Company in violation of Article VII of the agreement between Sabine Area Construction Committee and

Hoisting and Portable Local No. 450, entered into on April 1, 1971?

In an opinion dated October 29, the arbitrator concluded that "the Company had violated Article VII of the Agreement in refusing to employ Operating Engineers in the operation of the dewatering device in question."

In addition to answering the submitted question, the arbitrator formulated an award which mandated action by the Company:

> For the reasons given, the grievance is sustained and the Company directed to pay to the Union the wage scale applicable to operators over a twenty-four hour shift from the time the said system started until the date of compliance.

Thus the arbitrator awarded wage payments to Union in two time segments. The first extended from the beginning of the project until the date of the arbitrator's decision. The second segment, commenced on the decision date, was to terminate upon Company's compliance with the contract. The first segment awarded damages to Union based upon the wage scale applicable to operators. The second was to provide incentive for Company's compliance. But, the Company did not comply with the arbitrator's decision.

The men ordered to be hired were not hired, although the dewatering devices functioned for the duration of the project without the assistance of an operating engineer. Company made no payment of wages to the Union, either for the period before the arbitrator's decision or for the remainder of the project. Union now seeks to enforce the award in the amount of wages computed from the time the pumps started up on August 23, 1971, until they were cut off, March 23, 1972.

## II. *Applicable Legal Standard*

The famous *Steelworkers* trilogy established the relative roles of court and arbitrator in the adjudication of labor grievances. United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The Court directed lower courts to give considerable, but not conclusive, deference to the decisions of arbitrators. Justification for this abstention stems from the need for quick, decisive termination of labor disputes, as well as the general superiority of arbitrators and arbitration to judges and courts in resolving such grievances. Dunau, Three Problems in Labor Arbitration, 55 Va.L.Rev. 427 (1969); Aaron, Judicial Intervention in Labor Arbitration, 20 Stan.L.Rev. 41 (1967). Nonetheless, in United Steelworkers v. Enterprise Wheel & Car Corp., supra, in an exception cited as often as the general rule, the Supreme Court said that

> . . . . an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. 363 U.S. at 597, 80 S.Ct. at 1361.

This sole pronouncement of the Court on the subject, " . . . does not endorse utter finality nor does it draw a clear line by which to separate prohibited review of the merits from permissible confinement of the arbitrator to interpretation and application." Dunau, supra, at 430. As a result, courts have frequently invalidated awards under the labels of "arbitrability" and "authority." Jones, The Name of the Game is Decision—Some Reflections on "Arbi-

trability" and "Authority" in Labor Arbitration, 46 Tex.L.Rev. 865 (1968). This outcome has had both critics and supporters. Compare Comment, Vacating an Arbitrator's Award: A Procedural Solution, 30 U.Pitt.L.Rev. 542 (1969) with Note, Judicial Review of Labor Arbitration Awards after the Trilogy, 53 Corn.L.Rev. 136 (1967). The United States Court of Appeals for the Fifth Circuit has strongly supported enforcement of arbitration degrees. *E. g.,* International Union of Dist. 50, UMW v. Bowman Transportation, Inc., 421 F.2d 934 (5th Cir. 1970); Safeway Stores v. American Bakery & Confec. Workers, 390 F.2d 79 (5th Cir. 1968).

With this inconclusive explication of the judicial role, this Court will consider Company's objections to the arbitrator's decision.

### III. *Company's Contentions*

■ The numerous briefs and reply briefs submitted by the parties have refined to three, Company's objections to the award. Company first contends arbitrator exceeded his authority by deciding a question of jurisdiction between several unions. Company's attack is predicated upon the following portion of the arbitrator's opinion:

> A reasonable interpretation of this provision and one which the Arbitrator finds as proper is that whenever well points and similar dewatering devices are used, regardless of motive power, the same will be *maintained, installed and operated* by Operating Engineers. (emphasis added.)

Company contends that the language excludes pipefitters and electricians from work and thereby constitutes a craft-jurisdiction decision. The Court does not so interpret the opinion.

The arbitrator's conclusion that "the Company violated Article VII of the Agreement in refusing to employ Operating Engineers in the operation of the dewatering device in question," does not mention the other trades. Read as a whole, the opinion most logically holds Company bound by contract to employ one operating engineer for the pumps. If and when a breakdown should require electrical or pipefitting work, craftsmen from the appropriate union could be called in to make repairs. The Court reads the arbitrator's interpretation of the contract and award only to require the employment of an operating engineer to operate the pumps. It does not exclude the employment of electricians or pipefitters for installing, repairing or removing the pumps, or for any other function related to the pumps other than operation of the pumps.

■ Secondly, Company contends that the functioning of the pumps being automatic, no work is required for their operation. From this, it reasons that assignment of men to operate the pumps would violate the express contractual prohibition against featherbedding. This objection is in essence an invitation to review the arbitrator's interpretation of the contract, which the Court must decline. Such review would be improper. *See* Gulf States Tel. Co. v. Local 1692, Int. Bro. of Elec. Wkrs., 416 F.2d 198, 201 (5th Cir. 1969) and cases cited above.

Finally, Company objects to the provision that money be paid to Union. As Union's brief aptly suggests, the damage issue is the real gravamen of the case. Company contends (1) that nothing in the contract contemplates direct payments from Company to Union, (2) that the law does not favor such payments, citing 29 U.S.C. § 186 (1970), and (3) that because Union suffered no damage from the breach, it is not entitled to any compensation. Thus, Company concludes the arbitrator's award of any money directly to Union is beyond the arbitrator's authority and therefore invalid.

### IV. *The Award*

■ Arbitration decisions beyond the arbitrator's authority are unenforce-

able because, unlike adjudication, arbitration is a consensual method of resolving disputes. *See* United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The parties must agree to submit an issue to the arbitrator. Where consent has not been given, or to the extent limitations have been placed on his authority, an arbitrator is powerless to make an enforceable decision. Magnavox Co. v. I.U.E.W., 287 F.Supp. 47 (E.D.Tenn.1968). Under the trilogy exception a complaint of lack of authority in the arbitrator to make the award, remains one objection the courts must consider.

The relevant contract provision is broad, neither guiding nor restricting the arbitrator:

> All grievances other than those pertaining to wage rates that may arise on any job covered by this Agreement shall be handled in the following manner . . . the grievance shall be referred to an Arbitration Committee . . . the decision of the majority of the Committee shall be final and binding on the parties thereto.

In contrast to the broad language of the contract, the issue submitted to the arbitrator was narrowly drawn:

> Is the Company in violation of Article VII of the agreement between Sabine Area Construction Committee and Hoisting and Portable Local No. 450, entered into on April 1, 1971?

■■ The arbitrator's express mandate was solely to determine if a breach of contract had occurred. No express mention of formulating a remedy was made. Nonetheless, even where a narrowly defined issue is submitted, an arbitrator must be given considerable latitude in the drafting of an award. Lodge No. 12, Dist. No. 37, Intl. Assn. Machinists v. Cameron Iron Works, 292 F.2d 112, 119 (5th Cir.) cert. den. 368 U.S. 926, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961). Because rectifying damage caused by a contract breach is closely linked to identifying the breach itself, that latitude includes remedying any injury. Texas Gas Transmission Corp. v. International Chemical Workers, 200 F.Supp. 521 (W.D.La.1961).

■ The arbitrator interpreted the contract to require Company to hire men to operate the pumps. The award encouraged Company to hire the men by providing an unappealing alternative— paying the wages to Union without obtaining work in return. As a reasonable means of effectuating the contractual intent, an arbitrator has the authority to require payment of damages to a union pending compliance. Such authority clearly "draws its essence from the collective bargaining agreement." United Steelworkers v. Enterprise Wheel & Car Corp., supra, 363 U.S. 593, at 597, 80 S.Ct. 1358, at 1361. Accordingly, based upon authority reasonably implied by the quoted language of the contract, the award of damages to Union for the second time segment, that is, from the date of the arbitrator's decision until compliance, is enforceable. But, the award for the first time segment bears no reasonable relationship to encouraging compliance with the award and is punitive in nature. Authority for a punitive award cannot be implied, even from the broad language of the contract.

■ Contracting parties do not normally agree to assess exemplary damages for a breach of contract. Such damages being punitive in nature are rare in contract law. Contractual consent to so drastic a "remedy" for simple breach cannot be implied. Therefore, an arbitrator's assessment of punitive damages must be grounded in express language. In this case, neither the contract clause nor the simple question submitted suggest authority for exemplary damages.

■ The first time segment of the award cannot be considered compensa-

tion for damage because no compensable injury occurred to Union, either before or after the decision. The arbitrator found that Company had breached the contract by not hiring men to work the pumps. However, Union neither alleged nor proved damage to itself resulting from that breach. Union did not suffer any loss of wages or other money damage because of the breach.

Where no actual injury occurs, only nominal damages are appropriate. Corbin, Contracts § 1003 (1963). That is the case here. At most Union might claim a loss of union dues. However, even this damage is uncertain because in Texas, a right-to-work state, there is no assurance that those hired would have been union members. Restatement of Contracts § 131 (1936); Tex.Rev.Civ. Stat. art. 5207a (1962). Thus the first time segment of the award cannot be justified as substantive damages. Unlike payments for future breach, this portion of the award does not encourage prospective compliance thereby enforcing the contract; it only punishes for past breach.

■ Finally, no authority for the arbitrator's award for the first time segment can be found in general principles of law. Exemplary damages are almost never allowed for breach of contract. Courts require malice, ill will, or conscious disregard of the consequences before assessing damages beyond the level of injury compensation. Where, as here, the Company's objection to hiring men was made in good faith and was not without merit, the law of equity would not allow punitive damages. McCormick, Damages § 77 et seq. (1935).

■ It is appropriate to note that an arbitrator's error of law in assessing punitive damages is not sufficient reason to reverse his decision. Gulf States Tel. Co. v. Local 1692, Intl. Bro. of Elec. Wkrs., 416 F.2d 198, 201 (5th Cir. 1969). Similarly the result here is not intended as a "Solomonic" re-examination of the equities. Dallas Typographical Union, No. 173 v. A. H. Belo Corp., 372 F.2d 577, 579 (5th Cir. 1967). United Steelworkers v. American Mfg. Co., supra, 363 U.S. at 567, 80 S.Ct. 1343. Such ratio decidendi are inappropriate for a court in a labor arbitration situation. But, the Court's task here is a very narrow one, to determine whether the arbitrator's award exceeded his authority under the contract and submission papers. This Court is of the view that no "possibly plausible" reading of those documents could provide the arbitrator power to penalize a party as he did for the August to October period, or first time segment, of the award. Safeway Stores v. American Bakery & Confec. Wkrs., supra, 390 F.2d at 83. The arbitrator was simply "dispensing his own brand of industrial justice" without authority. United Steelworkers v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 597, 80 S.Ct. 1358. To ignore this clearly ultra vires aspect of the award would be to abandon any judicial review of arbitration.

■ Accordingly, the award for the second time segment will be enforced. However, the award for the first time segment will be denied enforcement except as to nominal damages of one dollar per day. Union is entitled only to nominal damages in such amount.

### V. Attorneys Fees

■ Finally, the Union prays and contends for attorneys' fees under the reasoning that Company's unjustified refusal to comply with the arbitrator's award compelled this suit and the resultant expenses. Intl. Union of Dist. 50, U.M.W. v. Bowman Transportation, Inc., supra. Obviously, under the disposition made by this Court, the Company's refusal was not without foundation. Local No. 149, International Union, United Auto, Aircraft and Agr. Implement Workers of America v. American Brake Shoe Co., 298 F.2d 212 (4th Cir. 1962). Therefore, Union's prayer for attorneys' fees will be denied.