**LOCAL 369, BAKERY & CONFECTIONERY WORKERS INTERNATIONAL UNION OF AMERICA, AFL–CIO**

**v.**

**COTTON BAKING COMPANY, INC.**

**Civ. A. No. 74–413.**

United States District Court,
W. D. Louisiana,
Shreveport Division.

July 11, 1974.

Robert J. Martin, Jr., Adair, Goldthwaite, Stanford & Daniel, P. A., Atlanta, Ga., for plaintiff; James R. Jeter, Cook, Clark, Egan, Yauncey & King, Shreveport, La., of counsel.

William F. Banta, Kullman, Lang, Inman & Bee, New Orleans, La., for defendant.

## OPINION

STAGG, District Judge.

This litigation involves a suit by a labor union to enforce an award of an arbitrator pursuant to a collective bargaining agreement. The Complainant is Local 369, Bakery and Confectionery Workers International Union of America, AFL–CIO, and the Respondent is the Cotton Baking Company, Inc. The matter is before this Court on Respondent's Motion for Judgment on the pleadings pursuant to Rule 12(c) F.R.C.P.

## STATEMENT OF FACTS

The Complainant (hereinafter called "B & C") is the union representing one of two groups of employees working at the Respondent's (hereinafter called "Cotton") plant. B & C filed a grievance under the terms of its contract with Cotton. The subject of the grievance was B & C's objection to Cotton's having members of another union doing B & C's work. Specifically, B & C objected to Cotton's instructing relay drivers to assist in the unloading of old bread from the trucks at the end of each day. B & C contended that this was properly B & C's work, to be done by dock porters. Cotton contended that the relay drivers were paid for a guaranteed number of daily and weekly hours and drivers with shorter runs were to use their idle time to help unload. A grievance procedure was initiated under the collective bargaining agreement, but failed. The matter was then submitted to arbitration, the next step provided for in the agreement.[1] The arbitrator decided the work issue in favor of B & C, and, additionally, awarded a sum equal to a year's porter's wages to the Union. In his decision on the monetary award, he said, " * * * it is clear economic benefit has accrued to the Company at the expense of the Union. It has saved the amount of wages of a Porter for a period of one year. Accordingly, it is further directed that the Union be awarded the wages which the Company took as what must be considered as a windfall resulting from its breach of contract."

B & C seeks to enforce this award. Cotton, however, contends that the arbi-

[1]. "19. NO WORK STOPPAGE GRIEVANCE PROCEDURE: There shall be no stoppage of work, strikes nor slowdowns, nor any other interference with production on the part of the Union, or the employees it represents during the life of this contract, or any lockout on the part of the Company. "It shall not be a violation of this Agreement for the Union to require its members to refuse to go through or work behind any primary picketline sanctioned by the Bakery and Confectionery Workers' International Union, AFL–CIO and it shall not be cause for disciplinary action for any employee to refuse to go through or work behind any such picketline.

"A. The Union shall appoint a Grievance Committee of five (5) men. Should any grievance or dispute arise, whether on the part of the Union or the Employer, such grievance shall be submitted, if requested by either party, in writing. If such grievance is presented in writing, it must be done so within seven (7) days after the occurance (sic) of the event giving rise to the grievance or it shall be considered waived.

"B. The Grievance Committee and the Employer shall promptly meet and earnestly endeavor to adjust and settle the grievance.

"C. If a settlement is not reached within thirty (30) days after the delivery of the grievance to the other party, a grievance may be submitted to an arbitrator for the final and binding arbitration thereof. If the parties are unable to agree on the arbitrator within seven (7) calendar days after service upon the other party of the request for arbitration, then he shall be chosen by lot from a list of seven (7) names of arbitrators to be furnished by the Federal Mediation & Conciliation Service under its procedures. No individual employee shall have the right to invoke arbitration, this right accruing to the Union as the representative of all employees covered hereby.

"D. The compensation and expense of the arbitrator shall be equally divided between the Company and Union."

trator exceeded his authority and resists enforcement of the award.

## CONCLUSIONS OF LAW

There are no disputed facts. All parties agree as to the fact that Cotton made a work assignment to relay drivers to do unloading, that the matter was submitted to arbitration, and that the award was made. The only issue is the singular legal issue as to whether, as a matter of law, the arbitrator exceeded his authority.

Jurisdiction is conferred on this Court pursuant to Section 301(a) of the Labor-Management Relations Act (29 U.S.C.A. 301[a] and 28 U.S.C.A. 1337.) B & C is an unincorporated labor organization and Cotton an employer, both within the meaning of Section 301(a).

The Supreme Court in the case of Textile Workers Union v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972, held that Section 301 of the Labor-Management Relations Act, 29 U.S.C. Section 185, provides a basis for the enforcement of collective bargaining agreements and the arbitration provisions contained in such agreements.

Guidelines for Courts in cases dealing with the decisions of arbitrators have been set out in the Supreme Court's important trilogy of labor arbitration cases, the "Steelworkers Trilogy".[2] This package of jurisprudence defines the District Court's role relative to the arbitrator's. These cases mandate an enforcement of the arbitrator's award, whether or not the Court agrees with the arbitrator's interpretation of the contract, so long as it is based on the collective bargaining agreement.

The United States Court of Appeals for the Fifth Circuit has adhered to this mandate by repeatedly upholding the enforcement of arbitrator's decisions. E. G., International Association on H. E. F. I. & A., Loc. 66 v. Leona Lee, 5th Cir.,

1974, 489 F.2d 1032; Steelworkers v. United States Gypsum Co., 5th Cir., 1974, 492 F.2d 713; Safeway Stores v. American Bakery and Conf. W. I. W., Local 111, 5th Cir., 1968, 390 F.2d 79. The Court in *Leona Lee* said, "In a suit to enforce an arbitration award, the court's role is very narrow. It cannot review the merits of the award, even in deciding the question of arbitrability, nor can the court attempt to interpret the collective bargaining agreement. Insofar as the arbitrator's decision concerns interpretation of the collective bargaining agreement, the courts cannot overrule the arbitrator because their interpretation of the agreement is different or because they disagree with the arbitrator's fact findings." International Association of H. E. F. I. & A., Loc. 66 v. Leona Lee, supra, 489 F.2d 1032, 1033, 1034.

The Supreme Court in U.S. Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424, noted, however, that while the arbitrator is allowed this independence he is "confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." Enterprise Wheel & Car, supra, 363 U.S. at 597, 80 S.Ct. at 1361.

Although Cotton has refused to accept the arbitrator's decision in its entirety, its primary objection is to the monetary award. In light of the Court's role relative to the arbitrator's, this Court must decline to delve into the wisdom of the arbitrator's interpretation of the contract. That portion of the arbitrator's

2. United Steelworkers v. American Mfg. Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers v. Enterprise Wheel & Car Corporation, 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

decision finding that Cotton violated its contract by allowing non-B & C employees to perform B & C work must be affirmed.

The award of one year's porter's wages, however, represents punitive damages and cannot be allowed to stand.

The grievance in this case was filed by the Union on January 30, 1973, protesting the actions of Cotton in transferring work which was historically and contractually that of B & C employees to employees within another bargaining unit. At the time of the dispute, the contractual wage rates for porters was fixed at $3.02 per hour. On the basis of 40 hours per week, for 50 weeks, the total amount of the arbitrator's monetary award was approximately $6,040.00. The arbitrator reasoned, *"While no present member of the unit lost pay as the result of the Company's action, it is* clear that the economic benefit has accrued to the Company at the expense of the Union. It has saved the amount of wages of a porter for the period of one year. Accordingly, it is further directed that the Union be awarded the wages which the Company took as what must be considered as a windfall resulting from its breach of contract." (Emphasis added.) It is impossible to classify the arbitrator's award of monetary damages to B & C as compensatory damages, because there is no injury *to the Union* for which compensation in the amount above suggested would be appropriate. The Union was not humiliated or degraded by a disagreement of such minimal proportions and, therefore, such an award cannot be found to be compensatory. Granted, the Union conceivably did lose a year's dues from the Porter vacancy, and this loss of dues would be compensatory and allowable. As the arbitrator, himself, stated, "While no present member of the unit lost pay * * *", there was, therefore, no loss on the part of any B & C member, the arbitrator alludes to none and the Union claimed none. At the hearing on this matter in this Court, Cotton emphasized that the Union complained of no damages at the arbitration stage; the Union did not contest this point. The Union did argue that the arbitrator could have intended the award of wages for some unspecified damages, but could only speculate as to what these damages might be. While the arbitrator in one breath says, " * * * benefit has accrued to the Company at the expense of the Union * * * ", a reading of the phrase in full context makes it clear that the award of wages in an approximate amount of $6,040.00 was *clearly intended as exemplary damages.*[3]

This Court takes notice of the Fifth Circuit holding in *Gypsum*, supra, 492 F.2d 713, at 731, where the Court said, " * * * in the absence of a different standard established by the agreement, the arbitrator did not, contrary to the command of the arbitration clause, 'add to, modify, detract from or alter (the agreement) in any way.' " That Court, however, noted a nexus between the breach and the remedy; in this case, there was none. As we noted above, there was no damage suffered or complained of; the arbitrator went as far as to say there was no loss. There is no relationship between the monetary award and the breach except a punitive one. Such an award can only be held to be extraordinary in view of a relatively *de minimus* dispute.

Judge Noel in the Southern District of Texas, in deciding the case of International Union of Operating Engineers, Local No. 450, v. Mid-Valley, Inc., S.D. Texas 1972, 347 F.Supp. 1104, held that while the arbitrator's power to fashion remedies is indeed broad and the remedies are valid so long as they draw their essence from the contract, punitive damages are drastic and cannot be implied.

3. This case is readily distinguishable from *Leona Lee*, in that the arbitrator in *Leona Lee* rejected the claim of exemplary damages. See the District Court's discussion of the award, Asbestos Workers v. Leona Lee, W.D.Texas 1973, 84 L.R.R.M. 2165, 2168.

The Court reasoned that a " * * * contractual consent to so drastic a 'remedy' for simple breach cannot be implied * * * In this case, neither the contract clause, nor the simple question submitted suggest authority for exemplary damages * * * (The) Union did not suffer any loss of wages or other money damage because of the breach * * * the award cannot be justified as substantive damages * * * this portion of the award does not encourage prospective compliance thereby enforcing the contract; it only punishes for past breach. * * * "

■ Again, the arbitrator determined that the Company breached the contract, that the disputed assignments should have been the Union's. It is not the Court's prerogative to question the arbitrator's interpretation of the contract. His remedy, in part, was to order the assignment of the work in question to the Union. There is a nexus here between the breach and the remedy. In this, he was correct. The arbitrator went further and ordered Cotton to pay a year's wages to the Union to punish it for receiving the "windfall". There is no relationship between this portion of the remedy and the breach. In this, he was incorrect.

For the above-stated reasons, the portion of the money award in excess of a sum equal to the Union dues for one dock porter for one year will not be enforced. The balance of the award was properly made, and the arbitrator's interpretation of the contract on work assignments will be enforced.

### ATTORNEY'S FEES

■ The Union has asked for attorney's fees in this case. Attorney fees may be awarded when the Court determines that the party refusing to accept the award has done so without justification. United Steelworkers of America v. United States Gypsum Co., supra, 492

---

4. Dallas Typographical Union, No. 173, v. A. H. Belo Corp., 5th Cir., 1967, 372 F.2d 577; and International U. of Dist. 50, UMW v.

F.2d 713, at 734. That Court recognized Local 140, UAW v. American Brake Shoe Co., 4th Cir., 1962, 298 F.2d 212, as being the primary case in the area and noted two earlier decisions by the Fifth Circuit citing *American Brake*.[4] For obvious reasons, the refusal was not without justification in this case. Accordingly, attorney's fees will not be allowed.

Counsel for the respondent will prepare and submit an appropriate Order in accordance herewith pursuant to our Local Rule 9(e).

Bowman Transportation, Inc., 5th Cir., 1970, 421 F.2d 934.