## COLLEGE HALL FASHIONS, INC.

v.

## PHILADELPHIA JOINT BOARD, AMALGAMATED CLOTHING WORKERS OF AMERICA.

Civ. A. No. 75–146.

United States District Court,
E. D. Pennsylvania.

Jan. 9, 1976.

---

5. *See* Advisory Committee's Note, Bankruptcy Rule 116.

Jerome L. Markovitz, Philadelphia, Pa., for defendant.

David Goldberg, Philadelphia, Pa., for plaintiff.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

The plaintiff, College Hall Fashions, Inc. ("Company"), filed a petition in the Court of Common Pleas of Philadelphia County to vacate an arbitrator's award in a dispute growing out of plaintiff's termination of its manufacturing operations. Pursuant to Section 301 of the Taft-Hartley Act of 1947 (29 U.S.C. § 185)[1] and 28 U.S.C. § 1441, defendant Philadelphia Joint Board Amalgamated Clothing Workers of America ("Union"),

---

1. 29 U.S.C. § 185(a) provides that:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties

removed the action to this Court, and now moves for judgment on the pleadings. Inasmuch as the parties have presented material which is outside the pleadings, we will treat this motion as one for summary judgment as provided in Rule 12(c) of the Federal Rules of Civil Procedure.[2]

The standards to be used in ruling on a motion for summary judgment are summarized in *Moore's, Federal Practice,* ¶ 56.15[3] at 2335–36 as follows:

> The courts are in entire agreement that moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to judgment as a matter of law.

> The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. (Footnotes omitted.)

We find that the Union has met its burden and demonstrated that there are no genuine issues of material fact in this case; the only issue is an issue of law which arises from the Company's attack on the arbitrator's power under the Collective Bargaining Agreement to enter subject award. As a matter of law, we find that the Union is entitled to summary judgment.

*Facts.*

On October 18, 1974, the Union requested an arbitration hearing alleging that the Company, in violation of the terms of the Collective Bargaining Agreement, continued to operate as a viable business entity, manufacturing and selling clothing under the trade name College Hall Fashions, Inc. after it had previously declared itself out of business. Because the Company was not employing its former employees, the Un-

ion requested the arbitrator to order the Company to employ all of its former employees or, in the alternative, to make provisions for severance pay for said employees. The Notice of Arbitration stated that the Union's request for severance pay was the issue to be decided. Prior to the hearing, the Company submitted a memorandum objecting to the arbitrator's jurisdiction and power either to hold an arbitration hearing or to enter any award.

After a hearing held on November 7, 1974, the arbitrator found in favor of the Union and awarded payments in the amount of $40,000. The arbitrator found that under the Collective Bargaining Agreement he did not have the jurisdiction to award severance pay to the employees but that he did have the power to require the Company to make a payment to the Union in connection with the Company's breach of the agreement. These payments were to be distributed by the Union to the former employees. Furthermore, he held that the Company was bound by the 1974–1977 agreement between the Union and the Clothing Manufacturers Association of America, since the Company had never withdrawn from the Manufacturers' Association.

In its petition to vacate the award, the Company claims that the award was improperly granted for numerous reasons. These include allegations that: the arbitrator exceeded his powers; the arbitrator ruled on matters not within the request for arbitration; the award was procured by corruption or other undue means; and the award contained plain mistakes of fact and law.

*Discussion.*

■ Jurisdiction to review arbitration awards exists in this Court pursuant to Section 301(a) of the Taft-Hartley Act of 1947, *supra,* n. 1. *See, e. g., Medo Photo Supply Corp. v. Livingston,* 274 F.Supp. 209, 213 (S.D.N.Y.1967), *aff'd* 386 F.2d 451 (2d Cir. 1967); *Kracoff v. Retail*

---

**2.** Rule 12(c) provides, in part: "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not exclud- ed by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ."

*Clerks Local Union No. 1357,* 244 F.Supp. 38, 40 (E.D.Pa.1965). Reviewing courts traditionally have been reluctant to set aside arbitrators' decisions. This reluctance is consonant with the strong federal policy favoring the resolution of industrial disputes by arbitration, *see, e. g., John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Gavlik Construction Co. v. H. F. Campbell v. Wickes Corp.,* 526 F.2d 777 (Filed October 31, 1975, 3d Cir.) The court's policy in this regard stems from the recognition that "[i]t is the arbitrator's construction which was bargained for . . ." *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424, 1429 (1960). A reviewing court may not interfere with an arbitration award simply because the court differs with an arbitrator's interpretation of provisions of the collective bargaining agreement; on the other hand, an arbitrator's zone of action is confined to the four corners of the bargaining agreement. *Enterprise Wheel, supra.*

The scope of our review of the arbitrator's award is narrowly circumscribed. We can only disturb the award where there is a manifest disregard of the collective bargaining agreement, totally unsupported by principles of contract construction and the law of the shop; when fraud, partiality, or other misconduct on the part of the arbitrator is shown; or when the award violates the command of some law, is too vague and ambiguous to be enforced, or is inconsistent with public policy. *Ludwig Honold Manufacturing Co. v. Fletcher,* 405 F.2d 1123 (3d Cir. 1969). The sole question before the Court is whether the arbitrator's decision is, "by reason of some circumstance outside the contract itself, 'so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling.'" *International Union of Electrical, Radio and Machine Workers, AFL–CIO v. Peerless Pressed Metal Corp.,* 489 F.2d 768, 769 (1st Cir. 1973), quoting *Safeway Stores v. Bakery Workers Local 111,* 390 F.2d 79, 82 (5th Cir. 1968). It has long been the rule that an award will not be set aside merely because the arbitrator erred in finding the facts or applying the law. *Ludwig Honold, supra,* 405 F.2d at 1132, *Orion Shipping and Trading Co. v. Eastern States Petroleum Corp.,* 312 F.2d 299, 300 (2d Cir. 1963), *cert. denied,* 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963); *Saxis Steamship Co. v. Multifacs International Traders, Inc.,* 375 F.2d 577, 582 (2d Cir. 1967); *Transport Workers Union of Philadelphia, AFL–CIO, Local 234 v. Philadelphia Transportation Co.,* 283 F.Supp. 597, 599 (E.D.Pa.1968). In this regard it must be remembered that it is the award, rather than the specific reasoning employed, that a court must review. *Schlesinger v. Building Service Employees International Union, Local 252,* 367 F.Supp. 760, 764 (E.D.Pa.1973); *American Can Co. v. United Papermakers and Paperworkers, AFL–CIO,* 356 F.Supp. 495, 499–500 (E.D.Pa.1973).

With the foregoing precepts as a foundation, we have reviewed the record of the arbitration process and conclude that the arbitrator's award must be affirmed. The Company alleges that the numerous errors committed by the arbitrator raise issues of fact. However, as we will discuss hereinafter, we believe that these alleged errors present only questions of law which must be decided against the Company. We will discuss them seriatum.

First, the Company claims that the arbitrator had no jurisdiction over it or the subject matter because the contract between the parties had terminated before the arbitrator entered his award. It points to Article 35(a) of the 1971–74 agreement, which states as follows:

(a) This Agreement shall be binding upon the parties hereto and their successors in interest and shall be effective upon the date hereof and shall remain in full force and effect until June 1, 1974. It shall be automatically renewed from year to year thereafter

unless on or before February 1, 1974 or February 1st of any year thereafter, notice in writing by certified mail is given by either the Association or an Employer not a member thereof or the Union to the other of desire to propose changes in this Agreement or of intention to terminate the same, in either of which events this Agreement shall terminate upon the ensuing June 1st.

The Company contends that the Union's letter of January 14, 1974, which informed the Philadelphia Clothing Manufacturers' Association of its desire to propose changes in the 1971–1974 agreement, constituted a termination of this agreement, effective June 1, 1974. The Company asserts that it has not been a member of the Philadelphia Clothing Manufacturers' Association on or after June 1, 1974; it does not have any contractual relations or agreement with the Union; therefore, it is not subject to the provisions of any agreement that provides for arbitration.

The arbitrator, however, did not agree with the Company's argument that it was not bound by the agreement. He found that the Company was a member of the Philadelphia Clothing Manufacturers' Association at the time that the Association and the Union entered into the agreement. Article 35(b) of that agreement encompasses the parties' understanding that,

(b) Anything to the contrary herein notwithstanding, in the event the Clothing Manufacturers Association of the United States of America and the Amalgamated Clothing Workers of America enter into any further agreements, amendment or modification with reference to wages, hours or conditions of employment, such agreement, amendment or modification shall be deemed automatically incorporated into this Agreement.

Therefore, held the arbitrator, the Company was bound by the terms of the successor agreement (1974–1977) between the Clothing Manufacturers Association of the United States of America and the Amalgamated Clothing Workers of America, absent a showing that it had formally withdrawn from the Association and had communicated its intent not to be so bound to the Union. Since he found that neither of these events had occurred, he ruled that the Company was subject to the 1974–1977 agreement. Furthermore, the arbitrator pointed to the fact that men's clothing garments presently being made with the College Hall Fashion label were being made under the terms of the 1974–1977 national agreement and construed this as added proof that the Company was bound by the terms of the agreement with the Amalgamated Clothing Workers.

This Court does not find the arbitrator's conclusion that the Company had never withdrawn from the Association and was thereby bound by the successor agreement, to be "in 'manifest disregard' of the law." His interpretation "can in [some] rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Ludwig Honold, supra,* 405 F.2d at 1128. Accordingly, we will not overturn the arbitrator's conclusion that he had jurisdiction over the plaintiff and the subject matter.

The Company's next contention is that the arbitrator's award of a penalty in the amount of $40,000 against it was contrary to the terms and provisions of the agreement and exceeded his powers. The arbitrator ruled against the Company on its claim that it had completely withdrawn from the men's clothing industry. He held that subsequent to the Company's alleged termination, it had entered into a licensing arrangement with another company, without the Union's knowledge and without its acquiescence. This arrangement constituted a violation of the agreement, inasmuch as by representing that it was closing down its operations the Company caused its employees to lose their jobs.

The arbitrator ruled that since the agreement contained no provision for severance pay, he did not have the duty

or jurisdiction to require the Company to grant severance pay to its former employees. However, he interpreted his duties under Article 31, Section (b), which states as follows:

> (b) The Impartial Arbitrator shall have general supervision over the performance and enforcement of this contract, and all matters of dispute, controversy or interpretation shall be heard, arbitrated and determined by him. The Impartial Arbitrator shall send copies of all decisions and rulings made by him to the Union and the Employer and the Philadelphia Clothing Manufacturers Association, and his decisions shall be final and binding upon the parties hereto,

as embodying the right and duty to impose penalties against any employer who violated the agreement. Finding that it was impossible to order the Company to reestablish its former operations to provide employment to its former employees, the arbitrator assessed a financial penalty of $40,000 against the Company for its violation of the Agreement but specifically stated that this sum was to be paid to the Union and distributed equitably by it to the company's former employees. In view of the fact that the arbitrator termed his award a "penalty" yet ordered that this "penalty" be distributed to the former employees "who suffered losses as a consequence of such violations" (Arbitrator's Decision, at 15), we must ascertain if the arbitrator exceeded his powers in making this award.

The standard that we follow was enunciated by the Supreme Court in *Enterprise Wheel & Car, supra,* 363 U.S. 597, 80 S.Ct. 1361, where the Court said:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

An arbitrator's power to assess a penalty or punitive damages [3] must be grounded in express language. *International U. of Op. Eng. Local No. 450 v. Mid-Valley, Inc.,* 347 F.Supp. 1104, 1109 (S.D.Texas 1972).[4] Because contracting parties do not usually agree to assess a penalty or punitive damages for any breach, consent to so drastic a remedy cannot be implied. *Id.* If the arbitrator had merely assessed a penalty there would be no question that he went beyond the power

---

3. Whether a court can award punitive damages pursuant to Section 301 of the National Labor Management Relations Act (29 U.S.C. § 185) is a matter on which the courts have disagreed. *See Butler v. Yellow Freight System, Inc.,* 374 F.Supp. 747 (W.D.Mo.1974) and cases cited therein. However, the instant case would not be an appropriate one in which to assess punitive damages even under the reasoning of the cases which permit this remedy. Extraordinary relief in the form of punitive damages is mandated only when it will achieve the goal of regaining and maintaining industrial peace as set forth in Section 301 and the Supreme Court's opinion in *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Since the employees in the instant case are no longer working for the Company, any award of punitive damages would not directly advance the goal of industrial peace. *See Local 127, United Shoe Workers of America v. Brooks Shoe Manufacturing Co.,* 298 F.2d 277 (3d Cir. 1962).

4. But *see Local 416, Sheetmetal Wkrs. Int. Ass'n v. Helgesteel Corp.,* 335 F.Supp. 812, 815–16 (W.D.Wisconsin 1971), where the court would not grant the Company's motion for summary judgment to vacate an arbitration award, holding that punitive damages could be awarded if they were reasonable. "Nor has it been determined that arbitrators, as distinct from the NLRB and the federal district courts, are barred from granting a punitive award. . . . Thus, the question here is not whether the award was 'punitive' but rather whether it was reasonable in light of the findings of the arbitration board. At this stage of this action, however, the parties dispute the precise import of those findings. Therefore, summary judgment is an inappropriate mechanism for determining at this time the reasonableness of the damage award and the question of the propriety of that award must await the resolution of the controversy over the findings of the arbitration tribunal."

conferred upon him. Authority for a penalty or punitive award cannot be implied here, even from the broad language of the agreement.

However, we are cognizant that "it is the award rather than the conclusion or the specific reasoning employed that a court must review." *American Can Co. v. United Papermakers and Paperworkers, AFL–CIO,* 356 F.Supp. 495, 499–500 (E.D.Pa.1972). So long as an arbitrator is not arbitrary, he has wide latitude in exercising his authority, especially in fashioning an appropriate remedy. *See Mogge v. District 8, Int'l Ass'n of Machinists, AFL–CIO,* 454 F.2d 510 (7th Cir. 1971). An arbitrator does not even have to give reasons for his award, *Enterprise Wheel, supra,* 363 U.S. at 598, 80 S.Ct. 1358; it is sufficient that he bring his "informed judgment" to bear in order to reach a fair solution to the problem. *Id.* at 597, 80 S.Ct. 1358.

In his decision, the arbitrator used the word "penalty" to describe his award. However, it is clear that he intended the payments to be used to compensate the former employees for the losses suffered by them as a result of the Company's breach of the contract. As we heretofore pointed out, he stated that the payments were "to be equitably distributed by it [the Union] to the former employees . . . who suffered losses as a consequence of such violations." (Arbitrator's Decision, at 15). The arbitrator was precluded from awarding severance pay by the terms of the contract; however, he indicated not only that payments should be made to the "affected" employees but that their distribution would be subject to his continued supervision. Although the arbitrator used the word "penalty", it is clear that he was awarding compensatory damages for distribution to the Company's former em-

ployees. We must ascertain whether he had this authority under the agreement.

The arbitrator's wide latitude in fashioning a remedy was demonstrated in *United Steelworkers of America v. United States Gypsum Co.,* 492 F.2d 713 (5th Cir. 1974), where the Fifth Circuit overturned the District Court's refusal to enforce portions of the arbitrator's monetary damage award. There the arbitrator found that the company had breached the contract between the parties by its refusal to negotiate pursuant to a wage reopener clause. Although ordinarily he would have ordered the company to bargain with the union, by the time the arbitrator made his decision the union had been decertified for approximately five years. Accordingly, the arbitrator ordered the company to pay the union the amount of wage increase which he thought the parties would have agreed to had they negotiated. In enforcing this part of his award, the Court held that there was a sufficient nexus between the breach of the reopener clause and the method selected to remedy that breach to support the conclusion that the remedy "[drew] its essence" from the contract. The Court added that the arbitrator's action ". . . merely represents an attempt to make the union whole for the damage suffered as a result of Gypsum's breach of the collective bargaining agreement. . . Nothing in the agreement precludes the remedy selected by the arbitrator." [Footnotes deleted]. 492 F.2d at 730–31.[5]

Another case which illustrates the arbitrator's wide range of authority in devising a remedy is *Minute Maid Co. v. Citrus Workers, Local 444,* 331 F.2d 280, 281 (5th Cir. 1964). There an arbitrator found that an employee had been wrongfully discharged and ordered that he be reinstated with back pay. The company argued that because the collective bargaining agreement did not provide for a

---

5. In *Gypsum,* the contract defined the arbitrator's authority as follows: "The arbitrator shall only have jurisdiction and authority to interpret, apply or determine compliance with the provisions of this agreement. The arbitra-

tor shall not have jurisdiction or authority to add to, detract from, or alter in any way the provisions of this contract." 492 F.2d at 730. This clause is similar to § 31(b), which defines the power of the arbitrator in this case.

back pay remedy, the award should not be enforced. Noting that the contract did not exclude from arbitration either the subject matter or the remedy adopted by the arbitrator, the Court rejected this contention and held that the essence of the award was adequately grounded in the contract.[6]

We find that the arbitrator's award does "draw its essence" from the contract and should be enforced. Under the contract, he possessed the authority to devise a remedy which was in the nature of compensatory damages. "Because rectifying damage caused by a contract breach is closely linked to identifying the breach itself, that [considerable] latitude [of the arbitrator] includes remedying any injury." *International U. of Op. Eng. Local No. 450 v. Mid-Valley, Inc.*, 347 F.Supp. 1104 (S.D.Texas 1972).

The Company's last argument is that the arbitrator's decision was procured by corruption or undue means. In support of this charge, the Company claims that it was prevented from adequately preparing its defense because the issue to be decided at the hearing was listed as "severance pay", yet the arbitrator assessed a penalty against it and did not grant severance pay. Because of this variance, the Company claims it was given insufficient notice of the subject matter of the arbitration. However, this conclusion is not supported by the evidence. The Union's letter of October 17, 1974 requesting arbitration clearly sets forth the facts and circumstances upon which it based its demand that the Company employ all of its former employees or else provide severance pay. The Company's reply letter of October 23, 1974 confirms its knowledge of the issues to be placed before the arbitrator and completely refutes its claim that lack of notice deprived it of a fair hearing. Furthermore, the arbitrator's opinion clearly states that the allegations contained in the Union's letter formed the basis for the hearing.

In refuting a similar contention, the Court in *United Steelworkers of America v. United States Gypsum Co., supra*, examined the Company's claim that because the grievance that was ordered to arbitration by the Court did not specifically mention the wage reopener, it was not an issue before the arbitrator. In affirming the arbitrator's decision that the grievance that was arbitrated properly inhered in the request for arbitration, 492 F.2d at 732, the Court referred to the statement of the Supreme Court in *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 556–7, 84 S.Ct. 909, 918, 11 L.Ed.2d 898, 908, which is as follows:

> [q]uestions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it.

We find that on the basis of the Union's letter requesting arbitration the issue decided by the arbitrator in the instant case was properly before him and the Company was given adequate notice of the subject of the arbitration.

For all of the aforementioned reasons, we grant the motion of the defendant, Philadelphia Joint Board, Amalgamated Clothing Workers of America, for summary judgment.

---

6. *See Tobacco Workers Intern. Union, Local 317 v. Lorillard Corp.*, 448 F.2d 949 (4th Cir. 1971); *Yellow Cab Co. v. Democratic Union Organizing Committee, Local 777*, 398 F.2d 735 (7th Cir. 1968), *cert. denied*, 393 U.S. 1015, 89 S.Ct. 619, 21 L.Ed.2d 561 (1969); *Schlesinger v. Building Service Employees International Union, Local 252*, 367 F.Supp. 760 (E.D.Pa. 1973).